IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD F. GANSKI, JR. | : | CIVIL ACTION |
| and LORRAINE V. GANSKI | : | |
| | : | |
| v. | : | |
| | : | |
| CASSANDRA WOLFF | : | NO. 09-1903 |

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                                August 7, 2012
United States Magistrate Judge

Presently before the court is plaintiffs' Motion For A New Trial Pursuant To

Federal Rule of Civil Procedure 59(a)(1)(A) (the "Motion") (Doc. 74), defendant's response

thereto (the "Response") (Doc. 75), plaintiffs' Amended Memorandum of Law In Support of the

Motion (Doc. 82) and defendant's response thereto (the "Supp. Response") (Doc. 83).  For the

reasons that follow, plaintiffs' Motion is denied.

I.      **BACKGROUND**

This is an automobile accident case.  On June 11, 2007, plaintiff Bernard Ganski's

automobile, a Honda SUV, was struck in the rear by an automobile driven by defendant,

Cassandra Wolff Berger.  The accident occurred in Delaware County, Pennsylvania.  On May 4,

2009, plaintiffs filed an action in this court, with plaintiff Bernard Ganski alleging a claim of

negligence (Count I) and Lorraine Ganski alleging a claim for loss of consortium (Count II).

As a result of the impact from the collision, plaintiff's vehicle rolled over twice.

(N.T. 5/14/12 at 23, 25.)  Bernard Ganski was restrained by a lap/shoulder belt.  At the scene,

plaintiff was seen by Emergency Medical Technicians ("EMT") and taken by ambulance to

Chester-Crozier Hospital.  Id. at 34.  As a result of the accident, plaintiff claimed he suffered

cervical and lumbar disc herniations with radiculopathy and a tear of the medial meniscus of the

left knee. (Compl. ¶ 9; N.T. 5/14/12 at 56-58.) In addition, he claimed he suffered "left-sided

brain damage" that resulted in linguistic deficits and loss of memory and concentration. He also

experienced personality changes that caused he and his wife to separate. (Pls.' Pre-Trial Memo.

at 2; N.T. 5/14/12 at 11-12.) Further, Mr. Ganski claimed he suffered a loss of earnings of

$524,360.33; he worked as an accountant and audit manager for a large corporation. (N.T.

5/14/12 at 47.)[1] Finally, Lorraine Ganski claimed that the injuries her husband sustained in the

accident caused a severe strain on their marital relationship and caused her to suffer a loss of

companionship with her husband. (Mem. of Law Supp. Mot. at 3).

      The court conducted a jury trial that commenced on May 11, 2012 and concluded

on May 16, 2012. Defendant stipulated that she breached her duty of care, but asserted that her

negligence was not a factual cause of the injuries claimed by plaintiffs. The jury rendered a

verdict in favor of defendant.

      On June 12, 2012, plaintiffs filed the Motion. Defendant opposes the Motion.

Trial transcripts were filed with the court. Thereafter, the parties submitted supplemental

memoranda.

## II.    DISCUSSION

      A decision to grant or deny a motion for new trial is within the sound discretion of

the trial judge. Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 812 (3d Cir. 1984),

cert. denied, 477 U.S. 908 (1986). A court should not grant a new trial unless the moving party

---

[1]     A complete list of the injuries Mr. Ganski claims to have suffered as a result of
the accident are listed in plaintiffs' Pre-Trial Memorandum at 2 and Memorandum of Law In
Support of the Motion at 3.

meets the heavy burden of showing that the verdict is clearly against the weight of the evidence

or is necessary to prevent a miscarriage of justice.  Roebuck v. Drexel Univ., 852 F.2d 715, 735-

36 (3d Cir. 1988).

Plaintiffs advance two arguments in support of the Motion.  They argue that "(1)

the jury's verdict was against the weight of the evidence at trial; and (2) it was a prejudicial error

of law to include the first question on the Jury Verdict Form in light of the fact that Plaintiff

produced uncontested evidence that the accident caused Plaintiff Bernard Ganski some degree of

harm."  (Mem. of Law Supp. Mot. at 2.)

The court will address the second of these arguments first.

1.      **The Question On The Jury Verdict Form**

Under Pennsylvania law, in order for plaintiffs to establish defendant's

negligence, they must prove four elements: "(1) a duty or obligation recognized by law; (2) a

breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4)

actual damage."  Grossman v. Barke, 868 A.2d 561, 566 (Pa. Super. Ct.), appeal denied, 889

A.2d 89 (Pa. 2005) (Table).  In the instant case, defendant stipulated only to the first two

elements, i.e., duty and breach of duty.  Defendant contested at trial whether there was any causal

connection between her conduct and the injuries claimed by plaintiffs.  Accordingly, the court

gave the following jury instructions:

> In this case, the defendant, Cassandra Wolff, has admitted negligence in causing
> the car accident that resulted in injuries plaintiff may have suffered and that are at
> issue in this litigation.  Thus, you are required to determine first, what injuries, if
> any, the plaintiff sustained that were caused by the accident.  And second, the
> amount of damages, if any to which the plaintiffs are entitled as compensation for
> such injuries.  The defendant, however, does not stipulate or agree that her
> negligence caused all the injuries or the extent or severity of the injuries claimed

by the plaintiffs.  In order for the plaintiffs to recover in this case, the defendant's negligent conduct must have been a factual cause in bringing about any harm. Conduct is the factual cause of harm when the harm would not have occurred absent the conduct.  To be factual cause, the conduct must have been an actual real factor in causing any harm, even if the result is unusual or unexpected.  A factual cause cannot be an imaginary or fanciful factor, having no connection or any insignificant connection with any harm.  To be factual cause, the defendant's conduct may not be the only factual cause.  The fact that some other causes concur with the negligence of the defendant in producing an injury, does not relieve the defendant from liability as long as his own negligence is a factual cause of the injury.  The parties agree that the defendant was negligent.  The parties disagree, however, as to whether plaintiff's claimed injuries were caused by the defendant. Therefore, you must decide the extent of the injuries, if any, the defendant caused and return a fair and just verdict in accordance with the law on damages that I will give in greater detail now.

Damages should be awarded for all injuries caused by the accident even if, one, the injuries caused by the accident were more severe than could have been foreseen because of plaintiff's prior physical condition.  Or two, a pre-existing medical condition was aggravated by the accident.  If you find that plaintiff, Bernard Ganski, did have a pre-existing condition that was aggravated by the defendant's negligence, the defendant is responsible for any aggravation caused by the accident.  I remind you that the defendant can be held responsible only for those injuries or the aggravation of a prior injury or condition that you find was factually caused by the accident.

(N.T. 5/16/12 at 104-05.)

Consistent with these instructions, the court also submitted Jury Interrogatories to the jury which included the following as the first question: "Was defendant Cassandra Wolff's negligence a factual cause in bringing about any harm to the plaintiff, Bernard F. Ganski, Jr.?" The jury unanimously answered "No" to this question.

Plaintiffs' first argument to support their claim that it was error for the court to submit this question to the jury is that "[d]uring closing argument, Defendants' [sic] counsel did not contend that Mr. Ganski suffered no injury, but instead argued that the injury Mr. Ganski

suffered as a result of the accident was minimal." (Mem. of Law Supp. Mot. at 4.) This

assertion is factually incorrect.

In his brief opening statement, defendant's counsel explained to the jury the

primary issue in the case pertained to causation:

> My client will tell you she's 100 percent responsible for causing this accident.
> This case is not about a bad impact and a lot of property damage. You will see
> rather quickly that sometimes bad accidents can happen and people can get out
> and walk away unhurt. What this case is about however is what you believe or
> what, if any, injuries you believe Mr. Ganski sustained as a result of my client's
> negligence.

(N.T. 5/14/12 at 13.)

In closing, defense counsel never conceded that plaintiff suffered any injuries as a

result of the accident. Defendant consistently maintained that plaintiff Bernard Ganski's claim

that he suffered injuries from the accident was not believable:

> And I told you early on in this case that sometimes there can be real bad impact
> and people walk away just fine. And we submit to you, members of the jury,
> that's what happened here. I told you what the case was about. I told you that the
> case is about whether or not you believed Mr. or Mrs. Ganski when they told you
> and testified, swore to you under oath, that they sustained any injury as a result of
> my client's negligence, and if you believe them, what the fair and reasonable
> compensation is for those injuries. And I told you the only issue in that regard for
> you to determine as members of the jury is credibility. Credibility. And I told you
> if you listened to the testimony, reviewed the evidence in front of you, that you
> would not be buying what the Ganski's are selling you.

(N.T. 5/16/12 at 61.)

Again, counsel for defendant suggested that although it "may" have been

reasonable for Mr. Ganski to claim some "aches and pains," the jury should not believe Mr.

Ganski because his testimony was unbelievable. Counsel stated the following:

5

But members of the jury, the bottom line is this, it's been four years, four years, if not more since he's seen anybody in connection with this incident.  He only had 3½ months of physical therapy.  It started in July, it ended November 5th.  And it was sporadic, that's it, for his neck and back.  That's it.  I'm not gonna sit here and tell you well he may not have had aches and pains.  I'm not gonna tell you that.  He may have.  It's for you to determine whether he had aches or pains.  It really is.  Is it reasonable that somebody may have after an accident like this?  Absolutely, I'm not gonna say otherwise.  But you have to believe him.  After hearing him testify and taking his depositions, we don't believe anything from Bernard Ganski.

. . . .

So, the first question that you have to ask is was my client's negligence the factual cause in bringing any harm to the Plaintiff.  We're gonna ask that you say no.  Because rather than play this straight and get compensated for what may have happened, that's not what they're doing here.  Mr. Epstein told you his client's life changed on June 11, 2007.  Oh, it did.  That was his payday.  That was his opportunity to come in here and take a bad accident which thankfully, both he and my client walked away from unscathed, and seek his retirement from you because that's what he's doing.  He asked for 1.7 million dollars, that's disgusting.

Id. at 85-86.  Because counsel for defendant never conceded that his client caused plaintiffs' harm, the court did not err in submitting the issue of causation to the jury.

Plaintiffs next argue that because defendant did not present an expert witness to contradict the testimony of Dr. Barry Gleimer, it was error for the court to submit the issue of causation to the jury.  Dr. Gleimer is a physician who treated Mr. Ganksi and testified that he suffered orthopedic injuries as a result of the June 11, 2007 accident.  The fact that defendant did not call her own expert witness to rebut Dr. Gleimer does mean she conceded the truthfulness or accuracy of Dr. Gleimer's opinion.  Defense counsel vigorously cross-examined Dr. Gleimer.  See Dep. of Dr. Barry Gleimer ("Gleimer Dep." at 36-77.)[2]  Accordingly, defense counsel suggested to the jury that Dr. Gleimer's opinion should be rejected as unbelievable.  (N.T.

---

[2]      Dr. Gleimer's trial testimony was presented by way of a videotaped deposition which occurred on December 29, 2011.

5/14/12 at 14; N.T. 5/16/12 at 78.)  The jury was free to disbelieve the testimony of an expert

witness such as Dr. Gleimer.  "Even if testimony is uncontradicted, the jury is not required to

accept everything or anything a party presents."  Bezerra v. Nat'l RR Passenger Corp., 760 A.2d

56, 63 (Pa. Super. Ct. 2000) (quoting Dawson v. Fowler, 558 A.2d 565, 567 (Pa. Super. Ct.

1989)), appeal denied, 785 A.2d 86 (Pa. 2001) (Table).  See also Strauss v. Springer, 817 F.Supp.

1211, 1218 (E.D. Pa. 1992) ("Credibility of witnesses and the weight to be given their testimony

is for the jury, which may exercise its independent judgment, even if such testimony is

uncontradicted.").  Without objection from plaintiffs, see N.T. 5/15/12 at 6, the court gave jury

instructions consistent with this principle.  The court stated:

> You may reject an expert's opinion if you find the facts to be different from those
> which form the basis of his opinion.  You may also reject his opinion if [after]
> careful consideration of all the evidence in the case, expert and otherwise, you
> disagree with the opinion.  In other words, you are not required to accept an
> expert's opinion as to the conclusions of the facts and circumstances disclosed by
> other testimony.  Since opinion is subject to the same rules concerning reliability
> as the testimony of other witnesses.  Remember also that you do not have to
> accept an expert's judgment regarding the credibility of any witness.

(N.T. 5/16/12 at 101-02.)

In a personal injury case, a jury has the right to reject the opinion of a plaintiff's

treating physician.  See U.S. v. 412.93 Acres of Land, More or Less, 455 F.2d 1242, 1247 (3d

Cir. 1972) ("The jury ... is under no obligation to accept as completely true the testimony of any

expert witness.  It may adopt as much of the testimony as appears sound, reject all of it, or adopt

all of it."); Wooley v. Great Atl. & Pac. Tea Co., 281 F.2d 78, 80 (3d Cir. 1960) ("The right of

the trier of the fact to reject oral testimony seems particularly appropriate when the testimony is

composed of opinions.").  In Brodhead v. Brentwood Ornamental Iron Co., 255 A.2d 120 (Pa.

1969), the Pennsylvania Supreme Court affirmed a jury verdict for the defendant where the

plaintiff claimed that the "uncontested" evidence showed that he suffered contusions as a result

of the accident and the claim was supported by his treating physician.  In affirming the defense

verdict, the Pennsylvania Supreme Court stated the following:

> There remains, however, the question of the contusions, evidence of which
> plaintiff contends is uncontested.  It is true that there is no evidence directly
> controverting the allegation that plaintiff suffered these injuries.  The only
> testimony substantiating the claimed injuries, however, came from plaintiff and
> the doctor who allegedly treated him for them.  The credibility of both the doctor
> and plaintiff was clearly at issue in this case.  The doctor was subjected to
> rigorous and effective cross-examination regarding plaintiff's entire medical
> history and was unable to substantiate his statements concerning this initial
> examination and treatment of plaintiff on the day following the accident by any
> records made at that time.  "From time immemorial, it has been the province of
> the jury in trespass cases, where oral testimony is concerned, to pass upon the
> credibility of witnesses even though uncontradicted by defendant [sic] witnesses
> or even though the defendant introduces no testimony at all."  Kopar v. Mamone,
> 419 Pa. 601, 603, 215 A.2d 641 (1966), quoting from Dorn v. Leibowitz, 387 Pa.
> 335, 340, 127 A.2d 734, 738 (1956).  By virtue of this rule even though the
> testimony concerning plaintiff's contusions was uncontroverted, its credibility was
> still for the jury.  We cannot disagree with the court below in its conclusion that
> the jury must also have disbelieved the testimony concerning the contusions, as
> well as the witness' testimony in arriving at its verdict.  Neither can we say that
> such disbelief is wholly unwarranted.

Id. at 122.  For all the above reasons, the court denies the Motion on the ground that the court

erred in submitting the issue of causation to the jury.

### 2.      **Weight Of The Evidence**

Plaintiffs' final argument is that the court should grant a new trial because the

verdict is against the weight of the evidence.  "New trials because the verdict is against the

weight of the evidence are proper only when the record shows that the jury's verdict resulted in a

miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993) (internal quotation omitted).

At trial Bernard Ganski claimed the following injuries were caused by the accident: a head injury resulting in cognitive and emotional deficits, neck pain, left shoulder pain, right knee pain and low back pain. The credibility of these claims was significantly called into question by the defense. First, with respect to the head injuries, plaintiff stated that upon impact his head repeatedly hit the inside of the car, despite the fact that he was restrained by the lap and shoulder harness. (N.T. 5/14/12 at 32.) He also claimed that he suffered a laceration to the head, which was bleeding. Id. As a result of this head trauma, plaintiff alleges he was unable to adequately perform his job as a highly skilled certified public accountant for a major pharmaceutical company. The defense, however, demonstrated that EMT and Emergency Room Records made no notations of any head trauma. Id. at 95. In fact, the EMT personnel stated that Mr. Ganski "denies striking his head, denies loss of consciousness." Id. at 91. The CAT scan of Mr. Ganski's head was normal. Id. at 94. Plaintiff was noted to be alert and responsive and, after testing, he exhibited no signs of a concussion. Furthermore, hospital records showed no observation or treatment for bleeding from the head. Id. at 95. The hospital released him the same day and he was instructed to take Motrin. Id. at 96-97. Defendant called a neuropsychologist, Thomas Sacchetti, Ph.D., who opined that plaintiff neither sustained a permanent head injury as a result of the accident, nor suffered from post-traumatic stress disorder. (N.T. 5/15/12 at 72, 80-82, 90-91.) Furthermore, Mr. Ganski admitted that he continued working as an accountant for a corporation earning an annual salary in excess of

$100,000.00, and received satisfactory reviews, while at the same time he claimed he had

cognitive difficulties resulting from the accident.  (N.T. 5/14/12 at 104-12.)

With respect to the physical injuries claimed by Mr. Ganski, plaintiff admitted

that the last time he sought medical treatment for those injuries was in 2008, four years prior to

trial.  Id. at 97; Gleimer Dep. at 77.  Defendant also introduced evidence of a prior automobile

accident in which Mr. Ganski was involved in November, 2003.  As a result of that accident, Mr.

Ganski brought a lawsuit and claimed many of the same injuries he claimed were caused by the

2007 accident that was the subject of the jury trial in this court.  (N.T. 5/14/12 at 73-74.)  In fact,

Mr. Ganski was treated for the 2003 injuries by Dr. Gleimer, the same physician he saw after the

2007 accident.  Id. at 72-73.  Dr. Gleimer issued a report in 2004 stating that the back and neck

injuries sustained in 2003 were permanent in nature.  Id. at 86.  As a result, Mr. Ganski and his

wife received a settlement check from the defendant in the 2003 accident.  Id. at 88.  Thus, the

jury had a basis for finding that Mr. Ganski was attempting to collect twice for the permanent

injuries for which he already was compensated.

In his 2010 deposition, Mr. Ganski testified under oath that he could not recall the

details of the 2003 accident or the subsequent lawsuit related to it.  Id. at 70.  He also denied

under oath or "could not recall" suffering the injuries he sustained in the 2003 accident.  Id. at

58-70, 74, 78-89; N.T. 5/15/12 at 153-54.  When Mrs. Ganski testified in her deposition in 2010,

she also could not recall her husband's 2003 accident, the lawsuit, or the fact that the case settled.

Id. at 53-55.  The record contained sufficient evidence from which the jury could find plaintiffs'

testimony devoid of any credibility and from which the jury could reject the Ganskis' testimony.

This is the jury's role as fact finder.  Mrs. Ganski testified that her marriage had been strained by

Bernard Ganski's change in mood, which plaintiffs claimed was caused from his injuries

sustained in the 2007 accident.  However, Lorraine Ganski admitted she was separated twice

from Bernard Ganski, that he had physically assaulted her on multiple occasions, and that she

changed the locks at their home to prevent him from re-entering.  Id. at 43, 55-56, 58-59.  It was

not unreasonable for the jury to conclude that these physical assaults were not caused by a single

motor vehicle accident, but were reflective of an unrelated and ongoing domestic dispute

between Mr. Ganksi and his wife.

After careful review of the entire record, the court finds that the jury's verdict was

well-supported by the evidence.  There neither was a miscarriage of justice, nor does the verdict

shock the conscience of the court.  Therefore, the request for a new trial based on the claim that

the verdict is against the weight of the evidence is denied.

An appropriate order follows.

BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge