IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BERNARD F. GANSKI, JR.            :           CIVIL ACTION
and LORRAINE V. GANSKI
                                              :

      v.
                                               :
CASSANDRA WOLFF                      NO.  09-1903

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                            September 30, 2014
United States Magistrate Judge

Presently before the court is plaintiffs' pro se Motion to File Documents Under Seal (the "Motion," Doc. No. 89) and defendant's response in opposition thereto (Doc. No. 90). For the reasons set forth below, plaintiffs' Motion is **DENIED**.

**I.    BACKGROUND**

On June 11, 2007, defendant Cassandra Wolff struck the rear of plaintiff Bernard Ganski's vehicle.  Plaintiff Bernard Ganski and his wife brought suit against defendant for injuries related to the accident.  Plaintiff Bernard Ganski claimed to have suffered a range of injuries resulting from the accident, including injuries to his back and knee, brain damage that resulted in linguistic deficits and loss of memory and concentration, and psychological and personality changes that caused he and his wife to separate.  Ganski v. Wolff, 2012 WL 3193939, at *1 (E.D. Pa. Aug. 7, 2012).  Plaintiff Lorraine Ganski claimed that her husband's injuries caused a severe strain on their marital relationship and caused her to suffer a loss of companionship with her husband.  Id.  Defendant stipulated that she breached her duty of care, but asserted that her negligence was not a factual cause of the injuries claimed by plaintiffs.  Id.

The jury returned a verdict in favor of defendant. Plaintiffs filed a motion for a new trial under Fed. R. Civ. P. 59(a)(1)(A) (Doc. No. 74). On August 7, 2012, this court denied the motion for a new trial by Memorandum of Decision (the "August 7, 2012 Decision," Doc. No. 84) reported at 2012 WL 3193939 (E.D. Pa. Aug. 7, 2012). On April 30, 2013, the Third Circuit Court of Appeals affirmed the decision. See Ganski v. Wolff Lighting Systems, 517 F.App'x 118 (3d Cir. 2013) (not precedential).

Plaintiffs' instant Motion requests an order sealing and/or redacting portions of the docket to be applied nunc pro tunc. Specifically, plaintiffs request that pages 1, 2, 6, 9, 10 and 11 of the August 7, 2012 Decision be redacted or the entire decision be sealed. Plaintiffs assert that these pages contain "personally identifiable and protected health information along with false injurious and libelous statements." (Mot. at 1.) Plaintiffs are concerned about the availability of the August 7, 2012 Decision on websites or search engines maintained by entities such as the United States District Court for the Eastern District of Pennsylvania, Government Printing Office, FindALaw, Google, Yahoo and Bing, and other third party legal information providers, and therefore request that the August 7, 2012 Decision be sealed or redacted. Id. at 1-2.

II.   DISCUSSION

The Third Circuit has recognized that a "common law right of access to judicial records is beyond dispute." Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994). Courts have adopted a "strong presumption" in favor of openness. Id. Before sealing judicial records, the court must articulate "the compelling countervailing interests to be protected, [make] specific

findings on the record concerning the effects of disclosure, and [provide] an opportunity for interested third parties to be heard." Id.

To obtain an order sealing or redacting judicial records, the moving party must show "good cause" for granting the motion. Pansy v. Bor. of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). Good cause is shown if "disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." Id. (citing Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. Seven factors, although neither mandatory nor exhaustive, may be considered in determining if the moving party has shown good cause: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). In addition to granting or denying the motion outright, the court also can limit the method of disclosure. Fed. R. Civ. P. 26(c)(1)(D). Courts have significant discretion in crafting protective orders to reduce potential harm. Pansy, 23 F.3d at 787.

Here, plaintiffs bear the burden of showing good cause. Plaintiffs assert three injuries resulting from the availability of the August 7, 2012 Decision on the internet. First, the

inclusion of personally identifiable and protected health information violated Bernard Ganski's rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936. (Mot. at 2.) Second, the August 7, 2012 Decision has damaged Bernard Ganski's reputation. Id. Third, Bernard Ganski claims he is unable to secure long term employment because of the availability of the August 7, 2012 Decision on electronic sources.

      A.      **HIPAA Violation**

Plaintiffs assert that reference to his medical evidence in the August 7, 2012 Decision violates his "rights" under HIPAA. (Mot. at 2, 5-8.) HIPAA regulates the use and disclosure of individuals' health information by covered entities. See 45 C.F.R. § 164.500, et seq. Under HIPAA, the court is not a covered entity. See 45 C.F.R. § 160.103. Thus, plaintiffs' reliance upon HIPAA is misplaced.

Additionally, plaintiffs did not complain of a HIPAA violation during the trial when some of Bernard Ganski's medical information was discussed in open court and admitted into evidence. Only now that the litigation proved unsuccessful in this court and on appeal in the Third Circuit Court of Appeals, do plaintiffs seek to withdraw the evidence from public view, or to try to blunt its impact.

HIPAA regulations allow medical records to be disclosed for judicial proceedings and produced in response to a subpoena provided that certain notice requirements have been met. 45 C.F.R. § 164.512(e)(1)(ii). At no time during the discovery period or during the trial did plaintiffs complain that the Federal Rules of Civil Procedure or HIPAA requirements were violated with respect to the production and use of Bernard Ganski's medical records. See

4

Thomas v. 1156729 Ontario Inc., 979 F.Supp. 2d 780, 785 (E.D. Mich. 2013) (Fed. R. Civ. P. 45(a)(1)(D) subpoena notice requirements are consistent with HIPAA regulations).[1]

### B.   Damage to Reputation

Plaintiffs claim the August 7, 2012 Decision damaged Bernard Ganski's reputation.  They assert that the decision "will make it extremely difficult for the plaintiff to live in the city of his birth and interact among his professional and social colleagues."  (Mot. at 9.)  Plaintiffs assert that the August 7, 2012 Decision contains "defamatory material" and "false injurious and libelous statements," at least one of which was made by defendant's counsel.  Id. at 1-2.[2]  However, plaintiffs do not provide specific support for these claimed injuries.  In Glenmede, the court found that plaintiff's "general allegations of injury to reputation"

---

[1]   Furthermore, by claiming physical and psychological injuries as a result of the accident, Bernard Ganski's medical records, physical and psychological, were relevant to the underlying litigation.  By filing this lawsuit, plaintiff Bernard Ganski waived any claim of privilege that may have existed in his medical records.  See Furey v. Wolfe, 2012 WL 877115, at *2 (E.D. Pa. Mar. 15, 2012) (citing cases).  Plaintiffs admit that Bernard Ganski's medical records were relevant and discoverable during the trial.  (Mot. at 6.)

[2]   This court carefully reviewed the August 7, 2012 Decision in its slip opinion form and the offending page numbers identified by plaintiffs, namely, pages 1, 2, 6, 9, 10 and 11.  (Mot. at 1-2.)  These pages merely discuss portions of the trial transcripts which are available on the public docket.  Page one of the slip opinion contains the beginning of a summary of the case.  Page two of the slip opinion lists some of the injuries Bernard Ganski claims to have suffered as a result of the accident, and refers the reader to plaintiffs' pre-trial memorandum and memorandum of law in support of the motion for new trial for a "complete list of the injuries Mr. Ganski claims to have suffered as a result of the accident."  Ganski v. Wolff, Civil Action No. 09-1903, slip op. at 2 and 2 n.1 (E.D. Pa. Aug. 7, 2012) (Doc. No. 84).  On page six of the slip opinion, the court quoted a passage from defense counsel's closing argument in response to an issue raised by plaintiffs in the motion for a new trial.  Id. at 4-6.  Page nine of the slip opinion contains a summary of the evidence with citations to the record.  Id. at 9.  Pages 10 and 11 of the slip opinion also contain a summary of evidence presented at the trial, including the testimony of plaintiffs.  Plaintiffs do not claim that the court's recitation of the record was inaccurate or not supported by the transcripts.

insufficient to support a finding of good cause. 56 F.3d at 484. Plaintiff Bernard Ganski's broad claim of damage to his reputation is not a "clearly defined or serious injury" as required to show good cause. See Rossi v. Schlarbaum, 2008 WL 222323, at *3 (E.D. Pa. Jan. 25, 2008) (court refused to seal record without demonstration of "clearly defined and serious injury" to party).

### C. Long Term Employment

Finally, plaintiffs allege that Bernard Ganski is unable to find long term employment due to the public availability of the August 7, 2012 Decision. Plaintiffs provide emails and a letter to support this contention. The emails, see Motion Ex. A, are an exchange between Bernard Ganski and an employment recruiter regarding an earlier conversation about an employment opportunity. In his email, Bernard Ganski addressed this employment opportunity and shared his concerns about the impact the August 7, 2012 Decision may have on his employment prospects. The recruiter did not respond until eleven days later stating that the prospective employer had not made a decision, "however rumor has it that it does not look good." (Mot. Ex A.) Second, plaintiffs attached to the Motion a letter sent to the court on April 8, 2013. (Mot. Ex. B.) In this letter, Bernard Ganski discusses several articles suggesting that seventy percent of employment rejections are derived from a candidate's online content and ninety percent of hiring managers consider a candidate's online presence. Again, plaintiffs' evidence regarding Bernard Ganski's inability to secure long term employment falls well short of the standard required to show good cause. The email exchange only shows that the topic of the August 7, 2012 Decision was raised by Bernard Ganski to his employment recruiter, and that Bernard Ganski was not hired by a specific employer for some unknown reason. The emails do not show a causal link, i.e., that Bernard Ganski was not hired because of the August 7, 2012

Decision.  The letter does not show that Bernard Ganski suffered any injury as a result of the availability of the August 7, 2012 Decision.  Therefore, plaintiffs have not shown that "disclosure [worked] a clearly defined and serious injury" to them.  Pansy, 23 F.3d at 786.

Furthermore, in plaintiffs' Motion for a New Trial, which was the subject of the August 7, 2012 Decision, plaintiffs argued that the jury's verdict was against the weight of the evidence and claimed an error of law relating to the first question on the Jury Verdict Form because plaintiffs produced uncontested evidence that the accident caused Bernard Ganski to suffer some degree of harm.  Ganski v. Wolff, 2012 WL 3193939, at *2  (E.D. Pa. Aug. 7, 2012). Given these arguments, plaintiffs had to have known that in its written opinion the court would be required to discuss the trial evidence which supported the jury's verdict, even though some of that evidence may have reflected poorly on plaintiff Bernard Ganski.  Thus, any harm to Mr. Ganski's reputation was not the fault of defendant or the court.  By voluntarily and affirmatively putting these issues to a public trial, plaintiffs cannot now complain about the disclosure of the evidence from that very same public trial they alone initiated.

### D.    Broader Interests

Finally, plaintiffs' request to remove from publication on the internet a judicial opinion, later affirmed by the Court of Appeals, implicates broader interests.  The discussion in the August 7, 2012 Decision has value, not just to the litigants in the case, but also to other litigants and attorneys who may refer to the discussion in the opinion for guidance or as support for arguments made in future litigation.  While our Court of Appeals has acknowledged a person's interest not to be harmed by defamatory statements made in a judicial opinion, the court nonetheless recognized "the even greater public interest in and need for access to verbatim

reports of judicial decisions." <u>Lowenschuss v. West Pub. Co.</u>, 542 F.2d 180, 185 (3d Cir. 1976). The court explained:

> As ours is a common-law system based on the "directive force" of precedents, its effective and efficient functioning demands wide dissemination of judicial decisions. That segment of the public engaged in the practice of law necessarily must remain abreast of decisions which subtly shape the contours and the body of the evolving law. Practicing attorneys must be able easily to locate authoritative precedents for their positions. Courts must be able to rely on briefs and citations of attorneys practicing before them and on their own research efforts to direct them quickly to the relevant cases. Even that part of the law which consists of codified statutes is incomplete without the accompanying body of judicial decisions construing the statutes. Accordingly, under our system of jurisprudence the judiciary has the duty of publishing and disseminating its decisions.

<u>Id.</u>

Because of the strong public interest in the publication of judicial decisions, the court declines to seal or redact the court's August 7, 2012 Decision even though public revelation of the trial evidence may cause embarrassment to plaintiffs. <u>See</u> <u>Dombrowski v. Bell Atlantic Corp.</u>, 128 F.Supp. 2d 216, 219 (E.D. Pa. 2000) (unsealing non-privileged paragraphs of a complaint amid claims of embarrassment and explaining that "pleadings are filed every day with allegations that may embarrass the opposing party. If mere embarrassment were enough, countless pleadings as well as other judicial records would be kept from public view. We will not travel down this road."). In <u>Hicklin Engineering, L.C. v. R.J. Bartell</u>, 439 F.3d 346 (7th Cir. 2006), the court reversed the lower court's decision to seal a judicial opinion. Judge Easterbrook, writing for the court, recognized the compelling need for accurate reporting to the public of judicial decisions. He stated:

> What happens in the federal courts is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments

> based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification.

Id. at 348. See also United States v. McCoullum, 2013 WL 3779154, at *1 (D.Me. July 18, 2013) (refusing to seal and remove a published opinion because it would "contravene the long-recognized public interest in the accurate reporting and dissemination of judicial decisions").

### III. CONCLUSION

For all the above reasons, the court will deny plaintiffs' Motion to File Documents Under Seal (Doc. No. 89). An appropriate order follows.

BY THE COURT:

 /s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD F. GANSKI, JR.<br>and LORRAINE V. GANSKI | : | CIVIL ACTION |
| | : | |
| v. | | |
| | : | |
| CASSANDRA WOLFF | | NO. 09-1903 |

**O R D E R**

AND NOW, this 30th day of September, 2014, upon consideration of plaintiffs' Motion to File Documents Under Seal (Doc. No. 89) and defendant's response thereto (Doc. No. 90), and in accordance with the Memorandum of Decision filed this same date, it is hereby

**ORDERED**

that the Motion is **DENIED**.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge